UNION TRUSTEED FUNDS, INC., PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket No. 7405.   Promulgated May 29, 1947.

*Charles A. Davey, Esq.*, for the petitioner.
*Neil D. McCarthy, Esq.*, for the respondent.

#### OPINION.

KERN, *Judge*: The Commissioner determined a deficiency in petitioner's income tax for the year ended December 31, 1942, in the amount of $1,226.78.   It is stipulated by the parties, in lieu of the filing of an amended answer, that the respondent now claims an increased deficiency in the amount of $2,042.92.   The question at issue is whether petitioner, a regulated investment company, is entitled to a capital gain dividend paid credit in the amount of $16,019.39.   The facts are stipulated and are found by us to be as stipulated.   They may be summarized as follows:

Petitioner is a Delaware corporation, with its principal place of business at Jersey City, New Jersey.   It filed its income and declared value excess profits tax return for the calendar year 1942 with the collector of internal revenue for the fifth district of New Jersey at Newark.

Petitioner elected in its income tax return for 1942 to be and qualified as a "regulated investment company" within the statutory provisions of section 361 of the Internal Revenue Code.

Petitioner was authorized to issue 1,000,000 shares of stock of the par value of $1 each.   The holder of each share is entitled to one

vote. The certificate of incorporation provided for the issuance of five specific classes of stock, each class to comprise the number of shares and bear the designation set out below:

| Class of stock | Shares |
|---|---|
| Union bond fund "A" | 100,000 |
| Union bond fund "B" | 200,000 |
| Union preferred stock fund | 100,000 |
| Union common stock fund "A" | 150,000 |
| Union common stock fund "B" | 200,000 |

The remaining 250,000 authorized shares were to be issued as the board of directors might determine.

It was further provided in the certificate of incorporation that the assets received as consideration for the issue or sale of stock of each class, together with all the income, earnings, profits, and proceeds thereof, including proceeds from the sale, exchange, liquidation, or reinvestment thereof, should irrevocably appertain to the class of shares for which such assets were received, subject only to the rights of creditors.

The assets of each class were to be invested only in the securities of corporations listed on the approved list for the particular class, or in U. S. Government bonds, or in cash. The type of securities approved for each class is indicated by the name by which each class was designated. Dividends were payable on each class of stock from the earnings or surplus applicable to such class, as the directors might determine, regular dividends to be paid once a year in an amount approximating the earnings, dividends, or interest, after provision for expenses, and extra dividends as and when determined by the directors from net profits from the sale of securities. In event of dissolution, the shareholders of each class were entitled to receive assets of such class available for distribution, and their proportionate share of any general assets not pertaining to any class. The assets of each class were to be charged with the liabilities of that class and its proportionate share of the general liabilities of the corporation. Provision was made for the conversion of shares of any class into shares of any other class upon application of the shareholder.

In 1940, the board of directors created two additional classes of stock, designated as follows: Union fund special, 25,000 shares; and Union bond fund "C," 200,000 shares.

Assets of each class were to be invested only in bonds, debentures, notes, certificates of indebtedness, equipment trust certificates, and similar securities, of a list of corporations approved for each class.

For the tax year 1942 long term capital gains and losses were realized from the disposition of assets appertaining to the several classes of petitioner's stock, as follows:

| | Long term | | Wash sales loss |
|---|---|---|---|
| | Gain | Loss | |
| Union bond fund "A" | $1,454.22 | $3,473.94 | $4.79 |
| Union bond fund "B" | 7,117.72 | 7,161.67 | 1,543.73 |
| Union bond fund "C" | 17,928.10 | | |
| Union preferred stock fund | 903.97 | 1,002.02 | |
| Union common stock fund "A" | | 158.27 | |
| Union common stock fund "B" | | 1,137.34 | |
| Total | 27,404.01 | 12,933.14 | 1,548.52 |
| Deduct loss | 12,933.14 | | |
| | 14,470.87 | | |
| Add wash sales loss | 1,548.52 | | |
| Net long term capital gain | 16,019.39 | | |

Short term capital gains and losses for the same period were as follows:

| | Short term | |
|---|---|---|
| | Gain | Loss |
| Union bond fund "A" | $221.34 | |
| Union bond fund "B" | 34.48 | $178.64 |
| Union bond fund "C" | 8,916.94 | 1,071.60 |
| Union preferred stock fund | 170.24 | |
| Union common stock fund "B" | | 26.88 |
| Total | 9,343.00 | 1,277.02 |
| | 1,277.02 | |
| Net short term capital gain | 8,065.98 | |

Earnings and profits, exclusive of capital gains and total distributions to stockholders of the several classes, in 1942, were as follows:

| | Earnings and profits | Distributed |
|---|---|---|
| Bond fund "A" | $8,225.46 | $10,167.57 |
| Bond fund "B" | 20,982.37 | 28,477.90 |
| Bond fund "C" | 65,570.45 | 69,047.72 |
| Preferred stock fund | 2,540.20 | 3,144.96 |
| Common stock fund "A" | 1,517.29 | 1,807.00 |
| Common stock fund "B" | (464.25) | 688.44 |

The excess of the net long term capital gains over the net short term capital losses of each class of stock was as follows:

Union bond fund "A" _____ ($2,014.93)
Union bond fund "B" _____ 1,355.82
Union bond fund "C" _____ 17,928.10
Union preferred stock fund _____ (98.05)
Union common stock fund "A" _____ (158.27)
Union common stock fund "B" _____ (1,164.22)

The petitioner corporation notified its stockholders of all classes that of the dividends received during the year 6.64 per cent represented a return of capital and therefore was not taxable to the shareholders, 14.13 per cent represented capital gain dividends, taxable as long term

capital gains, and 79.23 per cent represented ordinary income. The amounts designated as capital gain dividends were as follows:

| | |
|---|---|
| Union bond fund "A" | $1, 437. 16 |
| Union bond fund "B" | 4, 025. 27 |
| Union bond fund "C" | 9, 759. 71 |
| Union preferred stock fund | 444. 53 |
| Union common stock fund "A" | 255. 41 |
| Union common stock fund "B" | 97. 31 |

The question before us is entirely novel. It arises under sections 361 and 362 of the Internal Revenue Code, comprising Supplement Q, relating to the taxation of regulated investment companies. A "regulated investment company" is defined by section 361 (a) as "any domestic corporation (whether chartered or created as an investment trust, or otherwise)  *  *  *."

No question arises concerning the qualification of petitioner as a regulated investment company, or its election to be taxed as such. Nor is there any dispute over the pertinent facts or figures. The zone of contention is limited to the manner in which petitioner computed taxable income.

The statute provides for a tax of 24 per cent of the Supplement Q net income, as defined therein, and a surtax of 16 per cent on the Supplement Q surtax net income, as defined therein. The particular question here arises under section 362 (b) (5), (6), and (7) of the code, which provides:

(5) There shall be levied, collected, and paid for each taxable year a tax of 25 per centum of the excess, if any, of the net long-term capital gain over the sum of the net short-term capital loss and the amount of capital gain dividends paid during the year.

(6) A capital gain dividend shall be treated by the shareholders as gains from the sale or exchange of capital assets held for more than 6 months.

(7) A capital gain dividend means any dividend or part thereof which is designated by the company as a capital gain dividend in a written notice mailed to its shareholders at any time prior to the expiration of thirty days after close of its taxable year. If the aggregate amount so designated with respect to a taxable year of the company is greater than the excess of the net long-term capital gain over the net short-term capital loss of the taxable year, the portion of each distribution which shall be a capital gain dividend shall be only that proportion of the amount so designated which such excess of the net long-term capital gain over the net short-term capital loss bears to the aggregate amount so designated.

In the calendar year 1942 petitioner realized net long term capital gains of $16,019.39. The record shows that these gains were largely realized in the operation of bond funds B and C, most of it in bond fund C. Petitioner paid a total of $113,333.59 in dividends to all stockholders and designated $16,014.03,[1] or 14.13 per cent, as capital

---

[1] The slight discrepancy between the amount of the deduction claimed (the full amount of net capital gains realized) and the amount designated in the report to the stockholders results from the use by the company in its designation of the percentage 14.13 instead of 14.13472387.

gain dividends, although it could not legally distribute the capital gains of bond funds B and C to the shareholders of any other class, and there is no contention that it could or did.

It is the respondent's position here that petitioner must take the net long term capital gain, if any, of each fund, deduct therefrom the net short term capital loss, if any, of that fund, and the capital gain dividends, if any, distributed to the shareholders of that fund, paying tax on any remainder. The practical effect of this procedure is to treat each fund as though it were a separate corporation, a novel theory and one for which we find no support in either the statute, the regulations, or the decisions.

The characteristics of petitioner, that the assets received for its stock of any one class are separately held for the stockholders of that class, who alone receive as dividends the earnings and profits of that class, and no other, distinguish petitioner from business corporations, generally, as respondent suggests. It is not, however, uncommon among investment trust corporations. The fact that these corporations are basically different from business corporations generally has been recognized by Congress by the enactment of special statutory provisions for their taxation. It must be assumed that Congress considered such distinguishing characteristics, and yet the statute provides for the computation of the tax liability of such corporations by the use of the "excess of the net long-term capital gains" *of the corporation* over the "net short-term capital losses" *of the corporation*. However logical and persuasive may be the arguments in favor of another method of computing them, it is impossible to find any other meaning in the statute than that such corporations may offset against the capital gains of one fund the capital losses of another. In no other way can the excess of the net long term capital gains over the net short term capital losses of the corporation be arrived at.

We are of the opinion, therefore, that to this point petitioner has followed the statutory directions in its computation.

The next step in petitioner's computation consisted of the deduction of capital gain dividends distributed. Petitioner is, under the statute, taxable only on undistributed net capital gains of the corporation, i. e., the net long term capital gains minus net short term capital losses and minus capital gain dividends. The statute broadly defines a capital gain dividend as any dividend or part thereof which is designated by the company as a capital gain dividend in a written notice mailed to its shareholders within thirty days after the close of the taxable year. In the present case, petitioner notified its shareholders of all classes that 14.13 per cent of all the dividends received by them during the year was capital gain dividends, although, in fact, only bond funds B and C realized any capital gains in that year. By this method, petitioner, pursuant to section 362(b)(5), deducted $16,019.39,

the entire amount of capital gain realized, from its net long term capital gain, and the stockholders of four classes of stock which realized no taxable gains reported 14.13 per cent of the dividends received by them as capital gains, and the stockholders of one class which realized small capital gains reported as much as three times the gains actually so realized. The stockholders of the single class which had realized the largest capital gain received and reported as capital gains only slightly more than one-half the amount realized.

It must be admitted that the language of the statute which defines a capital gain dividend to be the amount which a corporation designates as a capital gain dividend is ambiguous and offers encouragement to the construction which petitioner places on it. However, when subsections (5), (6), and (7) of section 362 (b), which are quoted above, are read together, and the obvious intent of Congress to correlate the taxation of regulated investment companies and the taxation of the individual shareholders of such companies is considered, we can not escape the conclusion that Congress intended the language used by the statute to require that the corporation not designate as capital gain dividends amounts which are not, in law and in fact, capital gains to which the shareholder distributees are entitled as such. Here, no capital gains were realized by four of petitioner's "funds," and the capital gains of the one "fund" which did realize them could not legally be distributed to shareholders of any other class. The act of the corporation in designating as capital gains some part of the distributions to shareholders of those four which was in fact not realized from the disposition of any capital asset, certainly can not convert such distributions into capital gains. By the same token, the amounts designated as the capital gain dividend distributed to the stockholders entitled to share in the capital gains of bond fund B which were in excess of the actual net capital gains taxed under section 362 (b) (5) can not be considered as a capital gain dividend, since they did not in fact constitute capital gains. If petitioner had distributed the capital gains realized by bond fund B to the shareholders exclusively entitled to the distributions from that fund, and notified such shareholders of the amount thereof, and treated the gains realized by bond fund C similarly, it would have been entitled to the full deduction. Under the facts, however, it is entitled only to a deduction for the capital gain dividends actually representing capital gains and distributed to the shareholders entitled to it as such, and as to which the stockholders were notified as required by the statute. This could be no more than $9,759.71 as to bond fund C, and $1,355.82 as to bond fund B.

Reviewed by the Court.

*Decision will be entered under Rule 50.*